UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHONG PHAN,<br><br>Petitioner,<br><br>v.<br><br>MOISES BECERRA, et al.<br><br>Respondents. | No. 2:25-cv-01757-DC-JDP<br><br><br><br>ORDER<br><br>(Doc. No. 2) |

Petitioner Phong Phan filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully detained by Immigration and Customs Enforcement ("ICE"), a component of the Department of Homeland Security ("DHS"). (Doc. No. 1.) On June 23, 2025, Petitioner filed a motion for temporary restraining order and motion for preliminary injunction. (Doc. No. 2.) On June 30, 2025, a hearing was held on Petitioner's motion for temporary restraining order. (Doc. No. 13.) Attorney Christine Raymond appeared on behalf of Petitioner. Assistant United States Attorney Michelle Rodriguez appeared on behalf of Respondents. For the reasons explained below, the court will deny Petitioner's motions for temporary restraining order and preliminary injunction.

**BACKGROUND**

Petitioner is a native of Vietnam who entered the United States on May 12, 1981, as a refugee. (Doc. Nos. 1 at ¶ 27; 11-1 at ¶ 4.) On September 18, 1984, Petitioner became a lawful

1

1  permanent resident of the United States, retroactive to May 12, 1981. (Doc. Nos. 1 at ¶ 27; 11-1
2  at ¶ 5.) In 1992, Petitioner was convicted of violating California Penal Code sections 31 and 187.
3  (Doc. No.  at ¶ 28, n. 4.) Petitioner was then sentenced *inter alia* to state incarceration of 25-years
4  to life on January 15, 1993. (Doc. No. 11-2 at 7.) Petitioner served his sentence in a California
5  state prison. (Doc. No. 11-1 at ¶ 7.)

6  After serving approximately 29 years in state prison, Petitioner was granted parole in or
7  around May 2021, by the California Board of Parole Hearings and the California Governor. (Doc.
8  No. 1 at ¶ 28.) On April 27, 2021, the prison notified DHS that their records identified Petitioner
9  as a foreign national with possible removable offenses. (Doc. No. 11-1 at ¶ 7.) Following his
10 release from incarceration, Petitioner was detained by ICE to undergo removal proceedings
11 pursuant to 8 U.S.C. §§ 1226(c) and 1227(a)(2)(A)(iii). (Doc. Nos. 1 at ¶ 28; 11-1 at ¶ 7.)

12 On May 27, 2021, Petitioner attended a hearing before an immigration judge. (Doc. Nos. 1
13 at ¶ 28.) At that hearing, Petitioner accepted a removal order with the belief that he could not be
14 sent back to Vietnam because he entered the United States before July 1995, and an agreement
15 between Vietnam and the United States government prohibited his repatriation. (Doc. No. 1 at ¶
16 28.) After approximately two months under ICE detention, Petitioner was released from custody
17 in July 2021 and placed on a Form I-220B, order of supervision ("OSUP"). (Doc. Nos. 1 at ¶ 29;
18 11-1 at ¶ 9.) Such orders permit a noncitizen to remain in the United States free from custody but
19 impose certain conditions of release. In Petitioner's case, he was ordered to attend regular check
20 in appointments at the ICE San Francisco office. (Doc. No. 1 at ¶ 29.) Following his release,
21 Petitioner began working at a non-profit organization, reconnected with his family, and attended
22 his check in appointments as required. (*Id*. at ¶¶ 29, 32.)

23 Approximately four years after his release from ICE detention, on June 2, 2025, ICE's
24 Enforcement and Removal Operations ("ERO") Headquarters Alternative to Detention program
25 identified Petitioner "as an executable Final Order of removal." (Doc. No. 11-1 at ¶ 10.) On June
26 3, 2025, ICE served Petitioner with a Form I-200,Warrant of Arrest and re-detained him during
27 his regularly scheduled check in appointment at the ICE San Francisco office. (Doc. Nos. 1 at ¶¶
28 30, 34; 11-1 at ¶ 11.) The government asserts Petitioner was detained pursuant to 8 U.S.C. §

1231(a)(6), as a noncitizen deemed a flight risk or danger to the community. (Doc. No. 11-1 at ¶ 11.) Later that day, ICE transferred Petitioner to the Golden State Annex, a detention center located in McFarland, California. (Doc. Nos. 1 at ¶ 36; 11-1 at ¶ 11.)

Upon his re-detainment, Petitioner alleges he was not provided adequate and timely notice of the reasons he was re-detained. (Doc. No. 1 at ¶ 76.)  Petitioner also alleges he was not provided an initial interview and/or opportunity to respond to the revocation of his release. (*Id*. at ¶¶ 75–76.) Instead, Petitioner alleges that "[t]he only explanation given to [him] for his re-detention was that he had an arrest warrant, which presumably had existed since he was first ordered removed by the Immigration Court and before his release from ICE detention." (*Id*. at ¶ 31.) Petitioner also alleges his OSUP has never been "revoked, withdrawn, or otherwise cancelled." (*Id*.)

On June 23, 2025, Petitioner, through counsel, filed his petition for writ of habeas corpus and the pending motions for temporary restraining order and preliminary injunction. (Doc. Nos. 1, 2.) Petitioner filed a declaration and an affidavit in support of his petition and motions. (Doc. Nos. 1-1; 1-2.) That same day, ERO's Detention Operations Coordination Center coordinated and initiated the transfer of Petitioner to the Florence Service Processing Center in Florence, Arizona, due to operational needs. (Doc. No. 11-1 at ¶¶ 12–13.) On June 24, 2025, Petitioner was transferred to the Florence Service Processing Center. (*Id.*) On June 27, 2025, Respondents filed an opposition to Petitioner's motion with supporting exhibits and a declaration from Armando Meneses Jr., a deportation officer with DHS.[1] (Doc. No. 11.) On June 28, 2025, Petitioner filed a reply thereto. (Doc. No. 12.)

On June 30, 2025, the court held a hearing on Petitioner's motion for temporary

---

[1] In their opposition, Respondents move to strike and dismiss "all unlawfully named officials under § 2241." (Doc. No. 1, n. 1.) "Where an individual brings a "core" habeas petition challenging present physical confinement, the immediate custodian rule states that the proper respondent is the immediate custodian. *Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024). This rule applies to immigrant detainees who must also name their immediate custodian. *Id.* Here, Petitioner's immediate custodian for the purpose of this petition is facility administrator of the Golden State Annex, (Doc. No. 1 at ¶ 26), who has been properly named in this action when he filed the petition. Should Respondents seek to dismiss the remainder of the Respondents from this action, they should do so pursuant to a properly noticed motion.

restraining order. (Doc. No. 13.) At the hearing, counsel for Petitioner notified the court that at some point Petitioner had been transferred from Florence Arizona to a detention center in Alexandria, Louisiana.[2]

## LEGAL STANDARD

The purpose of a temporary restraining order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for temporary restraining order]." *Cal. Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't,*, 745 F.Supp.3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F.Supp.3d 1177, 1185 (C.D. Cal. 2015). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

---

[2] Petitioner's subsequent transfer to Louisiana does not strip the court of habeas jurisdiction. A district court's jurisdiction over a § 2241 petition "attaches on the initial filing for habeas corpus relief and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990). Thus, "once a petitioner has properly filed a habeas petition in the district of confinement, any subsequent transfer does not strip the filing district of habeas jurisdiction." *Rincon-Corrales v. Noem*, No. 25-cv-00801-APG-DJA, 2025 WL 1342851, at *2 (D. Nev. May 8, 2025) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)).

**DISCUSSION**

In his motions for temporary restraining order and preliminary injunction, Petitioner seeks injunctive relief. Specifically, that "Respondents shall release Petitioner from custody immediately and are enjoined from re-detaining him unless and until he is afforded a hearing before a neutral adjudicator on whether his re-detention is not indefinite, and further whether it is justified by evidence that he is a danger to the community or a flight risk."[3] (Doc. Nos. 2 at 24; 2-1 at 2.)

At the hearing on Petitioner's motion for a temporary restraining order, the court asked Petitioner to clarify what he meant by the phrase "neutral adjudicator." Petitioner indicated that the "neutral adjudicator" referred to in his motion is this court. Petitioner further explained that the relief he is seeking at this stage is that this court release Petitioner and enjoin Respondents from re-detaining him unless and until this court makes a finding that his detention would not be indefinite, such that there is a changed circumstance making it reasonably foreseeable that he is likely to be removed from this country.

The injunctive relief Petitioner seeks in his motions, however, is improper. The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any order of removal. 8 U.S.C. §1231(a)(1). However, once that time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute", and the noncitizen must be released. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release. 8 U.SC. § 1231(a)(3), (6). The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release for purposes of removal. Specifically, a noncitizen's release may be revoked "if, on account of changed

---

[3] In his reply, Petitioner, for the first time requests the court enjoin Respondents from removing him to a third country. (Doc. No. 12 at n. 2.) Because this request was not properly raised in a noticed motion, the court cannot rule on his request until the request is properly before the court.

1   circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be
2   removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon such a
3   determination:

> [T]he alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

*Id*. § 241.13(i)(3). If the noncitizen is not released from custody following the informal interview, continued detention is governed by 8 C.F.R. § 241.4. *Id*. at § 241.13(i)(2).

   Here, Petitioner requests the court enjoin Respondents from re-detaining him unless this court first holds a hearing and makes factual findings as to whether his re-detainment is warranted. However, Petitioner's proposed injunctive relief interferes with the Executive Branch's authority. At bottom, Petitioner's requested injunctive relief would require this court to make the initial finding that a changed circumstance has occurred such that Petitioner can be re-detained. This request is squarely at odds with the plain language of 8 C.F.R § 241.13(i)(2). *See Van Nguyen v. Hyde*, No. 25-cv-11470-MJJ, 2025 WL 1725791, at *3 (D. Mass. Jun. 20, 2025) (finding the plain language of § 241.13(i)(2), does not allow a court, in the first instance, to make an individualized finding that a changed circumstances has occurred) (quoting *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023)). Instead, the court is only authorized to review ICE's initial determination of re-detainment in light of the factors set out in C.F.R. § 241.13(f). *Id*.

   At the hearing held on Petitioner's motion for a temporary restraining order, Petitioner directed the court to 28 U.S.C. § 2243 in support of the assertion that this court has the authority to prevent Respondents from re-detaining Petitioner only after this court conducts an initial hearing. However, § 2243 pertains to the issuance of a writ of habeas corpus, and does not include any information regarding the district court's ability to enjoin Respondents from re-detaining Petitioner if he were to be released. Further, Petitioner does not cite to any authority in

his motions and did not point to any other relevant authority at the hearing to support the proposition that this court can enjoin Respondents from re-detaining Petitioner until this court conducts an initial hearing. *See Trinh v. Homan*, No. 18-cv-00316-CJC-GJS, 2018 WL 11184556, at * 8 (C.D. Cal. Oct. 18, 2018) (finding the Supreme Court did not imbue the courts with expansive authority to interfere with the government's ability to effectuate federal immigration law) (citing *Zadvydas*, 533 U.S. at 659).

Accordingly, this court lacks authority to grant the relief requested, and on this basis alone, the motions will be denied. *See Hoang Trinh*, 2018 WL 11184556, at *8 (finding that petitioners' proposed injunctive relief that the court "prevent the Government from detaining pre-1995 Vietnamese immigrant unless the Government makes an evidentiary showing that Vietnam agreed to repatriate them" was improper because it intruded on executive branch authority).

## CONCLUSION

For the reasons explained above,

1. Petitioner's motion for temporary restraining order and motion for preliminary injunction is denied (Doc. No. 2) is DENIED; and

2. This matter is referred to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated: **June 30, 2025**

Dena Coggins
United States District Judge