UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHONG PHAN,<br><br>   Petitioner,<br><br> v.<br><br>MOISES BECCERRA,<br><br>   Respondent. | No. 2:25-CV-01757-DC-JDP<br><br>ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION<br><br>(Doc. No. 16) |

  Petitioner Phong Phan filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully detained by Immigration and Customs Enforcement ("ICE"), a component of the Department of Homeland Security ("DHS"). (Doc. No. 15.) This matter is before the court on Petitioner Phong Phan's motion for temporary restraining order and motion for preliminary injunction. (Doc. No. 16.) Pursuant to Local Rule 230(g), the court found it appropriate to take the matter under submission to be decided on the papers. For the reasons explained below, the court will grant Petitioner's motion for temporary restraining order and preliminary injunction.[1]

---

[1] The court will treat Petitioner's motion for temporary restraining order and motion for preliminary injunction as a singular motion for preliminary injunction. The Respondents had notice and an opportunity to respond. Moreover, the parties have briefed the issues extensively and the standard is the same. *Doe v. Becerra*, No. 25-cv-00647-DJC-DMC, 2025 WL 691664, at

1

## BACKGROUND

**A.    Factual Background**

The court previously summarized the events that preceded the court's prior order denying Petitioner's initial motion for temporary restraining order and motion for preliminary injunction. (*See* Doc. No. 14 at 1–4.) Since the issuance of the court's order, Respondents have filed a declaration from Charles GallenKamp, a deportation officer with ICE's Enforcement Removal Operations. (Doc. No. 19-1.) In his declaration, Mr. GallenKamp declares that as of July 11, 2025, there is no travel document to Petitioner's country of origin, Vietnam, and a "travel document request for Petitioner is in the process of being completed." (*Id*. at 19-1 at ¶¶ 5, 7.)

**B.    Procedural Background**

On June 23, 2025, Petitioner filed his initial petition for writ of habeas corpus, motion for temporary restraining order, and motion for preliminary injunction. (Doc. Nos. 1, 2.) In his motions, Petitioner requested the court enter a "temporary restraining order and a preliminary injunction ordering that Respondents release him from custody and refrain from re-detaining him unless and until he is afforded a hearing before a neutral adjudicator on whether his re-detention is not indefinite, and further whether it is justified by evidence that he is a danger to the community or a flight risk." (Doc. No. 2 at 24.) On June 27, 2025, Respondents filed an opposition to Petitioner's motion. (Doc. No. 11.) On June 28, 2025, Petitioner filed a reply thereto. (Doc. No. 12.)

On June 30, 2025, the court held a hearing on Petitioner's motion. (Doc. No. 13.) In the hearing, Petitioner was provided an opportunity to clarify his request that Respondents release him from custody and refrain from re-detaining him unless and until he is afforded a hearing before a neutral adjudicator. Specifically, the court asked Petitioner what "neutral adjudicator" would be responsible for conducting the hearing. In response, Petitioner explained that their request was to enjoin "Respondents from re-detaining him unless *this court* first holds a hearing and makes factual findings as to whether his re-detainment is warranted." (Doc. No. 14 at 6)

---

*3 (E.D. Cal. Mar. 3, 2025).

1  (emphasis added).

2  Later that day, the court issued an order denying Petitioner's motion for temporary
3  restraining order and motion for preliminary injunction. (*Id*.) In its order, the court found
4  Petitioner's proposed injunctive relief would require the court to make the initial finding of a
5  changed circumstance before Petitioner could be re-detained. (*Id*. at 6.) The court found this form
6  of relief was, in effect, an improper intrusion on the Executive Branch's authority. (*Id*. at 6–7.)
7  The court then concluded it lacked the authority to grant the relief requested and denied
8  Petitioner's motions on that basis alone. (*Id*. at 7.)

9  On July 3, 2025, Petitioner filed the operative first amended petition for writ of habeas
10  corpus. (Doc. No. 15.) Petitioner then filed the instant motion for a temporary restraining order
11  and motion for preliminary injunction on July 9, 2025. (Doc. No. 16.) On July 15, 2025,
12  Respondents filed an opposition to Petitioner's motions.[2] (Doc. No. 19.) On July 15, 2025,
13  Petitioner filed a reply thereto. (Doc. No. 20.)

14  **LEGAL STANDARD**

15  The standard governing the issuing of a temporary restraining order is "substantially
16  identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D.*
17  *Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the
18  moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable
19  harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips
20  in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat.*
21  *Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

22  A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits
23  submitted in support of and in opposition to the motion for preliminary injunction." *Cal. Rifle &*

---

[2] In their opposition, Respondents move to strike and dismiss "all unlawfully named officials under § 2241." (Doc. No. 19, n. 1.) "Where an individual brings a "core" habeas petition challenging present physical confinement, the immediate custodian rule states that the proper respondent is the immediate custodian. *Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024). Petitioner has properly named their immediate custodian, the Facility Administrator of the Golden State Annex. However, if Respondents seek to dismiss the other Respondents from this action, they must do so in a properly noticed motion.

3

*Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't,*, 745 F.Supp.3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## DISCUSSION

### A. Petitioner's Motions are not Duplicative

In their opposition, Respondents argue Petitioner "unlawfully attempts to relitigate the denial of their first [injunctive] motions. (Doc. No. 19 at 1.) The court finds Respondents argument unpersuasive. As addressed above, the court denied Petitioner's initial motions because it did not have the authority to grant the relief he requested. Specifically, the court found that Petitioner's request he be released and this court be required to hold a hearing prior to any re-detention was improper. (Doc. No. 14 at 5.) Subsequently, Petitioner has filed an amended petition and motions for injunctive relief asking for relief that is substantively different from what the court considered in its initial order. Accordingly, the court finds Petitioner's motions are not duplicative.

### B. Likelihood of Success on the Merits

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any order of removal. 8 U.S.C. §1231(a)(1). However, once that time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute", the noncitizen must be released. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release. 8 U.SC. § 1231(a)(3), (6). The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release for purposes of removal. Specifically, a noncitizen's release may be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon such a determination:

4

> [T]he alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

*Id*. § 241.13(i)(3). The plain langue of § 241.13(i)(2), does not allow a court, in the first instance, to make an individualized finding that a changed circumstances has occurred. *Van Nguyen v. Hyde*, No. 25-cv-11470-MJJ, 2025 WL 1725791, at *3 (D. Mass. Jun. 20, 2025) (quoting *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023)). Instead, to the extent ICE claims that it made such a determination, the court should review that claim in light of the factors set out in 8 C.F.R. § 241.13(f), "instructing ICE on how it should make such a determination." *Id*. The § 241.13(f) factors include but are not limited to:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

*Id.* Respondents do not dispute that the above regulations apply to this case, nor do Respondents argue that compliance with these regulations are not required.

Petitioner has shown he is likely to succeed on his claim that Respondents did not properly revoke Petitioner's release pursuant to § 241.13, for the following reasons. First, in his amended petition, Petitioner alleges Respondents have not timely provided him with an initial interview or an opportunity to respond to the purported reasons for revocation. (Doc. No. 15 at ¶ 85.) Despite having multiple opportunities to address this issue, (Doc. Nos. 11, 19), Respondents have not provided any evidence that Petitioner was provided an informal interview. While at the June 30, 2025, hearing Respondents claimed Petitioner was notified of the reason for his arrest at the time he was taken into ICE custody, Respondents conceded they have no specific information regarding whether an informal interview occurred and proffered no evidence thereof. (*See*

5

1  *generally* Doc. Nos. 11, 13, 19.) Indeed, Petitioner alleged that the only reason he was given for
2  his arrest was that he had an outstanding arrest warrant, which presumably existed since he was
3  first ordered removed by an Immigration Judge in 2021. (Doc. No. 15 at ¶ 33.)
4      Because there is no indication that an informal interview was provided to Petitioner, the
5  court finds Petitioner is likely to succeed on his claim that his re-detainment was unlawful. *See*
6  *Wing Nuen Liu v. Carter*, No. 25-cv-03036-JWL, 2025 WL 1696526, at *2 (D. Kan. Jun. 17,
7  2025) (finding "that officials did not properly revoke petitioner's release pursuant to [§] 241.13"
8  because "and most obviously . . . petitioner was not granted the required interview upon the
9  revocation of his release"); *Sering Ceesay v. Kurzdorfer*, No. 25-cv-00267-LJV, 2025 WL
10 1284720, at *21 (W.D. N.Y. May 2, 2025) (finding petitioner was not afforded even minimal due
11 process protections when ICE failed to provide petitioner an informal interview upon his re-
12 detainment); *Cf. Ahmad v. Whitaker*, No. 18-cv-00287-JLR-BAT, 2018 WL 6928540, at *5
13 (W.D. Wash. Dec. 4, 2018) (finding that despite not being provided an informal interview, the
14 court could not find an actionable injury because ICE had already "scheduled Mr. Ahmad's
15 removal"); *see also Roe v. Oddo*, No. 25-cv-00128, 2025 WL 1892445, at *8 (W.D. Pa. Jul. 9,
16 2025) (finding ICE had provided notice and informal interview, and consequently, had complied
17 with the applicable laws).
18     Second, Petitioner has shown he is likely to succeed on his claim that Respondents cannot
19 demonstrate a changed circumstances such that there is now a significant likelihood Petitioner
20 will be removed to Vietnam in the reasonably foreseeable future.
21     Respondents argue that due to a change in circumstances, as set forth in their prior
22 opposition, Petitioner is detained for removal in the reasonably foreseeable future. (Doc. No. 19
23 at 5.) Specifically, Respondents argue that due to "an updated executive branch assessment
24 indicating likelihood of removal, there is now [a] high probability Petitioner will be removed in
25 the reasonably foreseeable future[.]" (Doc. No. 11 at 4.) Respondents have not provided this
26 "updated executive branch assessment" to the court, so the court is unable to consider its contents
27 for purposes of this motion.
28     Next, Respondents contention that Petitioner's removal is reasonably foreseeable because

1  removals to Vietnam are in fact occurring is unpersuasive. (Doc. No. 19 at 6.) In support of their
2  contention, Respondents cite to findings and recommendations issued in *Hoang Tuong Nguyen v.*
3  *Field Off. Dir., San Francisco Field Off.*, No. 24-cv-01579-KES-EPG, 2025 WL 1864885 (E.D.
4  Cal. Jun. 3, 2025). Therein, the magistrate judge recommended that a pre-1995 Vietnamese
5  immigrant's petition be denied as moot, because he the petitioner was removed from the United
6  States to Vietnam on March 19, 2025. (*Id*.)

7  However, Respondents reliance on a single case, *Hoang Tuong Nguyen*, does not aid the
8  court's analysis on whether there are changed circumstances. Pre-1995 Vietnamese immigrants
9  may be repatriated to Vietnam on "a case-by-case basis." *Hoi Thanh Duong v. Tate*, No. 24-cv-
10 04119-H, 2025 WL 933947, at *4 (S.D. Tex. Mar. 27, 2025) (quoting *Trinh v, Homan*, 446 F.
11 Supp. 3d 1077, 1083 (C.D. Cal. 2020)). As noted above, Vietnam has discretion whether to issue
12 a travel document to any individual. The petitioner's removal to Vietnam in *Hoang Tuong*
13 *Nguyen* merely demonstrates that on one occasion, an individual was repatriated from the United
14 States to Vietnam. *Cf. Wing Nuen Liu*, 2025 WL 1696526, at *2 (finding that "a single example
15 of documentation being received in March from the Chinese Embassy for one Chinese alien is
16 hardly persuasive" to demonstrate changed circumstances).

17 Respondents have not provided the court with sufficient information that could aid the
18 court's analysis on the foreseeability of removal to Vietnam. The court finds the analysis offered
19 in *Van Nguyen* applicable. In *Van Nguyen*, the court found it was "missing some very pertinent
20 information" including the total number of requests for removal that were made to Vietnam. *Van*
21 *Nguyen*, 2025 WL 1725791, at *4. The court reasoned it might be able to gauge how likely it is
22 that the petitioner would be removed to Vietnam if the court knew what percentage of the
23 requests Vietnam accepted. *Id*. For instance, the court found "[i]f DHS submitted 350 requests
24 and Vietnam issued travel documents for 328 individuals" then removal was significantly likely.
25 *Id*. However, "if DHS submitted 3,500 requests and only 328 individuals received travel
26 documents" the court noted "Respondents would not be able to meet their burden." *Id*. Similarly,
27 the court has no evidence regarding the percentage of successful requests to Vietnam to
28 demonstrate changed circumstances.

7

As to Respondents' assertion of a pending updated travel document request, Respondents intent to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future. (Doc. No. 19 at 5.) Indeed, Respondents represent that Petitioner was unable to be removed in 2021, "due to § 1231(a)(2) concerns with travel documents." (*Id.*); *see* § 241.13(f) (factor to consider includes "nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts"). However, Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around. Respondents' intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance. *See Wing Nuen Liu*, 2025 WL 1696526, at *2.

Lastly, Respondents contend Petitioner's removal to Vietnam is foreseeable because he declined to apply for relief from removal and requested a removal order to Vietnam on May 4, 2021. (Doc. No. 19 at 5.) Respondents' contention is unavailing. Petitioner's acceptance of a removal order, in itself, does not mean that Vietnam will accept a travel document for him.

Here, Petitioner has shown that Respondents likely did not provide him with an informal interview as required by § 241.13(i)(3). Petitioner has also shown it is likely that there is no change in circumstances such that Petitioner will be removed to Vietnam in the reasonably foreseeable future as required by § 241.13(i)(2). Government agencies are required to follow their own regulations, *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *see Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993) ("[W]hen a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and [the government] fails to adhere to it, the challenged deportation proceeding is invalid."). Consequently, the court concludes that Petitioner has shown a likelihood of success on the merits of his claims that his re-detainment is unlawful because ICE had not complied with the controlling regulations to re-detain him.

Therefore, this factor weighs in favor of granting Petitioner's motion for temporary restraining order and preliminary injunction.

### C. Irreparable Harm

The Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention" including "subpar medical and psychiatric care in ICE detention facilities" and "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Since Petitioner's release from ICE custody in 2021, he has reconnected with family and obtained employment at a non-profit in San Francisco. (Doc. No. 16 at 30.) If Petitioner remains detained, he is at risk of losing his employment and subsequently, his housing. (*Id.*)

Further, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). The Ninth Circuit has also noted that "unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez*, 872 F.3d at 999.

Therefore, this factor weighs in favor of granting Petitioner's motion for temporary restraining order and preliminary injunction.

### D. Balance of the Equities and Public Interest

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation omitted). Petitioner has demonstrated that he is likely unlawfully detained in violation of his due process rights and is suffering the harms of

9

immigration detention. On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal, especially considering Petitioner's compliance with the requirements of the Order of Supervision ("OSUP"), his weekly attendance at his ICE meetings since his release from custody in 2021, and his economic and familial ties to San Francisco. (Doc. No. 16 at 12.)

Despite Respondents' argument to the contrary, there is nothing in the current record to suggest that releasing Petitioner would impede Respondents' ability to remove him if the necessary travel documents is obtained. Further, the Ninth Circuit has recognized that "[t]he costs to the public of immigration detention are 'staggering,'" and that "[s]upervised release programs cost much less by comparison. . . ." *Hernandez*, 872 F.3d at 996. Government expenditure in this case is not in the public interest in light of Petitioner's compliance with his OSUP, stable employment, and consistent attendance at scheduled ICE meetings. *See Vargas v. Jennings,* 2020 WL 5074312, at *4. Therefore, the court finds that all four *Winter* factors weigh in favor of Petitioner.

**E.  Status Quo**

In his motions, Petitioner asks the court to release him from detention "to preserve the status quo before [Respondents] unlawful actions[.]" (Doc. No. 16 at 10.) The status quo *ante litem* is "the last uncontested status which preceded the pending controversy[.]" *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir, 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)); *see Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) ("the 'status quo' refers to the legally relevant relationship between the parties before the controversy arose.") (citing *McCormack v. Hiedeman*, 694 F.3d 1004, 1020 (9th Cir. 2012)).

In their opposition, Respondents argue Petitioner is attempting to disturb "[t]he status quo [] this court-of-custody found in [its prior order], [] that changed circumstances warrant Petitioner's civil detention pending his reasonably foreseeable removal to Vietnam, his country of origin." (Doc. No. 19 at 7.) Respondents' characterization of its prior order is incorrect. The court did not address the status quo in its prior order.

Here, Petitioner had been on supervised release for almost four years until he was re-

detained by the government. (Doc. No. 15 at ¶¶ 34, 36.) Because Petitioner challenges his re-detainment, the last uncontested status of Petitioner was before he was re-detained on June 3, 2025. *See Doe*, 2025 WL 691664, at *2 ("It is questionable whether that status quo is properly considered to be detention when the Government suddenly took an allegedly unconstitutional action in rearresting Petitioner without a hearing."); *Domingo-Ros v. Archambeault*, No. 25-cv-01208-DMS-DEB, 2025 WL 1425558, at * (S.D. Cal. May 18, 2025) (granting an injunction for petitioners that sought a "probationary injunction" to "preserve the status quo preceding this litigation—their physical presence in the United States free from detention"); *Abrego Garcia v. Noem*, No. 25-cv-00951-PX, 2025 WL 1014261, at *9 (D. Md. Apr. 6, 2025) (finding that the petitioner "request[ed] relief designed to re[s]tore the status quo ante . . . to return him to where he was on March 12, 2025, before he was apprehended by ICE and spirited away to [the Terrorism Confinement Center in El Salvador]"); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *3 (N.D. Cal. Jul. 4, 2025) (finding that the "moment prior to the Petitioner's likely illegal detention" is the status quo). Accordingly, the court finds Petitioner's immediate release is required to return him to the status quo.

**CONCLUSION**

For the reasons explained above,

1. Plaintiff's motions for temporary restraining order and preliminary injunction (Doc. No. 16) are GRANTED;
2. Respondents are ORDERED to immediately release Petitioner from Respondents' custody; and
3. Respondents are ENJOINED AND RESTRAINED from re-detaining or removing Petitioner to a third country without notice and an opportunity to be heard; and

/////
/////
/////
/////
/////

11

    4.     This court will set an expedited briefing schedule on the petition for writ of habeas corpus by order following the issuance of this order.

IT IS SO ORDERED.

Dated: __**July 16, 2025**__

Dena Coggins
United States District Judge

12